IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                     No. CR 12-973 JB

LYMAN ALBERT SERRANO,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed August 27, 2012 (Doc. 27). The Court held a hearing on September 6, 2012. The primary issues are: (i) whether the Court should sustain Serrano's objections to the recommendation in the Presentence Investigative Report ("PSR"), disclosed August 21, 2012, for an upward departure of one category in Defendant Lyman Albert Serrano's criminal history, pursuant to U.S.S.G. § 4A1.3; and (ii) whether the Court should sustain Serrano's objections to the recommendation in the PSR for an upward variance in Serrano's sentence, pursuant to 18 U.S.C. § 3553(a)(1)-(7). For reasons stated on the record at the hearing and for further reasons stated herein, the Court will sustain Serrano's objections and will not adopt either recommendation in the PSR.

      Serrano, pursuant to a Plea Agreement, filed June 8, 2012 (Doc. 21)("Plea Agreement), pled guilty to the Indictment, filed April 24, 2012 (Doc. 14), charging him with a violation of 18 U.S.C. § 2111, the offense of Escape. See Plea Agreement ¶ 3, at 2. Under the terms of the Plea Agreement, the parties stipulate that Serrano is entitled to a reduction of 4 levels from his base offense level pursuant to U.S.S.G. § 2P1.1(b)(3), because his escape was from a halfway house and he did not commit any crimes while away from the facility. See Plea Agreement ¶ 9(a), at 3-4.

Additionally, the parties stipulate that Serrano was entitled to a further reduction of 2 levels from his base offense level pursuant to U.S.S.G. § 3E1.1, owing to Serrano's "clearly demonstrated . . . recognition and affirmative acceptance of personal responsibility for [his] criminal conduct." Plea Agreement ¶ 9(b), at 4.

The United States Probation Office ("USPO") in its PSR applies a base offense level of 13 to Serrano, pursuant to U.S.S.G. § 2P1.1. PSR ¶ 17, at 6. Based upon Serrano's reductions, the USPO calculates Serrano's total offense level to be 7. See PSR ¶ 18, at 6; id. ¶¶ 24-25, at 6. Serrano has a criminal history category of II. See PSR ¶ 63, at 15. The USPO calculates that, with a total offense level of 7 and a criminal history category of II, the guidelines imprisonment range is 2 to 8 months. See PSR ¶ 63, at 15.

The USPO recommends an upward departure in Serrano's criminal history category of one level, to category III, under U.S.S.G. § 4A1.3. See PSR ¶ 79, at 17. In support of this recommendation, the USPO points to Serrano's arrests and convictions that did not earn him criminal history points, including a juvenile conviction for Voluntary Manslaughter, six tribal convictions, and four other arrests which did not result in convictions. See PSR ¶ 79, at 17. The Voluntary Manslaughter offense occurred when Serrano was fourteen. Serrano and a co-defendant were involved in an altercation with the victim and the victim's brother. During the altercation, the co-defendant struck the victim multiple times with a bat, inflicting serious injury on the victim. Meanwhile, Serrano stabbed the victim's brother in the stomach, and then proceeded to stab the victim ten times. The victim died shortly thereafter, after being taken off life support while brain dead. See PSR ¶ 29, at 7. Further, the USPO argues that a departure is warranted because Serrano's adult conviction, which earned him three criminal history points, was for a violent offense. See PSR ¶ 34, at 8-9; id. ¶ 79, at 17. At the age of twenty, Serrano was convicted of Armed Robbery for

taking a watch, cellular telephone, and $222.00 in cash from a victim at gunpoint, with a 9mm handgun. See PSR ¶ 34, at 8-9.  Lastly, the USPO also states that, because Serrano's escape offense is his third federal offense before at age of twenty-nine, an upward departure is warranted. See PSR ¶ 79, at 17.

The USPO also recommends an upward variance in Serrano's sentence, pursuant to 18 U.S.S.G. § 3553(a). See PSR ¶ 80, at 17-18.  The USPO pointed to the nature and circumstances of this offense as justification for the recommendation, specifically that Serrano tested positive for spice while at the halfway house and that Serrano's two prior federal convictions were for violent offenses. See PSR ¶ 79, at 18.  Additionally, the USPO notes that Serrano's adjustment during his incarceration has been "poor," during which time he has received numerous disciplinary reports and has associated with a dangerous prison gang. See PSR ¶ 79, at 18.  In light of these factors, the USPO recommends an upward variance of 2 months. See PSR ¶ 81, at 18.  Thus, with both the upward variance and upward departure, the USPO recommends a total sentence of 12 months. See PSR ¶ 81, at 18.

Serrano objects to the USPO's recommendations. See Defendant's Sentencing Memorandum at 3.  Serrano asserts that the USPO's recommendation for a departure is unwarranted because: (i) the PSR lists four arrests which did not result in convictions; (ii) Serrano did not have counsel in three of his prior convictions; and (iii) four of the cases listed in the PSR were dismissed. See Defendant's Sentencing Memorandum at 3-5.  Further, Serrano asserts that, because many of the convictions listed in the PSR in support of the USPO's recommendation for a departure and variance occurred before the relevant time period used in calculating Serrano's criminal history category, these convictions should not be counted against him. See Defendant's Sentencing Memorandum at 6.  Serrano objects to the USPO's recommendation for an upward variance as well.

See Defendant's Sentencing Memorandum at 7-9.  Serrano argues that, because he voluntarily surrendered himself, and was in custody six days after walking away from the halfway house, his behavior evidences submission to authority and he is thus within the "heartland of defendants who have committed similar offenses."  Defendant's Sentencing Memorandum at 8-9.

The United States does not to refute Serrano's interpretation of his criminal history.  See USA Sentencing Memorandum at 1-2.  United States' Response to Defendant's Sentencing Memorandum, filed August 27, 2012 (Doc. 28)("USA Sentencing Memorandum").  The United States posits, however, that Serrano is a "young hoodlum" with an "extensive criminal history that has continued to become more violent as he has become older and stronger."  USA Sentencing Memorandum at 2.  The United States nonetheless defers to the Court's discretion in determining what sentence is appropriate.  See USA Sentencing Memorandum at 2.

The Court accepts Serrano's plea agreement, including the recommendation for a sentence at the low end of the guidelines.  See Transcript of Hearing at 11:8-11 (taken September 6, 2012)(Court)("Tr.").[1]  Because the parties do not dispute the factual findings or sentencing guidelines applications in the PSR, the Court adopts those as its own.  See Tr. at 11:11-15 (Court).  The Court has carefully considered the USPO's recommendation for a departure, but finds that a departure is not warranted.  See Tr. at 13:10-11 (Court).  The Court is not convinced that Serrano's criminal history category of II "significantly under-represents his criminal history in the past and also his likelihood of criminal history in the future."  Tr. at 12:25-12:6 (Court).  In deciding not to depart, the Court is influenced by some of Serrano's prior convictions having occurred on tribal lands and that Serrano was not represented in each of his convictions.  See Tr. at 12:7-13 (Court).

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

The Court also carefully considered USPO's recommendation for an upward variance. See Tr. at 13:3-15 (Court). After going through each of the factors in 18 U.S.C.A. § 3553(a)(1)-(7), the Court finds that the nature of Serrano's offense is not so serious as to require a variance outside of the applicable guidelines range. See Tr. at 13:15-14:30 (Court). Despite the presence of troubling incidents in Serrano's criminal history, the Court is persuaded that Serrano's escape from a halfway house is not so serious that the Court should vary based on Serrano's past criminal history. See Tr. at 14:14-15:9 (Court). As to Serrano's likely future criminal conduct, the Court is troubled by the risk of recidivism, but the Court believes that, with an intense supervised release, there is the possibility of success. Serrano was doing well on supervised release before he became frustrated. The sentence should be sufficient deterrent. The Court will, thus, keep Serrano's criminal history category at II and will not vary from the guidelines sentencing range. See Tr. at 13:1-12, 15:8-9 (Court).

The Court takes into account not only the guidelines, but also the other goals of sentencing, including adequate deterrence, in fashioning Serrano's sentence. See Tr. at 15:12-16:14 (Court). The Court believes that Serrano's conviction and incarceration of any length promotes respect for the law. See Tr. at 16:7-8 (Court). Serrano has to serve most of his supervised release for his prior conviction, No. CR 03-01011 MV, Tr. at 9:1-18 (Court), so Serrano will receive supervision from two federal judges in the District Court. The Court hopes that this intense supervision will keep Serrano on the straight and narrow, and if he strays, he very likely is looking at incarceration.

**IT IS ORDERED** that the Court sustains Defendant Lyman Albert Serrano's objections to the recommendations in the Presentence Report, and Serrano is committed to the custody of the Bureau of Prisons for a term of two months. This sentence shall run consecutively to any time that remains in Serrano's prior sentence, No. CR 03-01011 MV.

                                                               _____
                                                               UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
William Pflugrath
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Leon Encinias
Albuquerque, New Mexico

      *Attorney for the Defendant*